(No. 51812.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RONALD JONES, Appellee.

*Opinion filed December 20, 1979.—Rehearing*
*denied February 1, 1980.*

William J. Scott, Attorney General, of Springfield, and Edward F. Petka, State's Attorney, of Joliet (Donald B. Mackay, Melbourne A. Noel, Jr., and Neal B. Goodfriend, Assistant Attorneys General, and John X. Breslen and Terry A. Mertel, of the State's Attorney Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and G. Joseph Weller, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

4

MR. JUSTICE CLARK delivered the opinion of the court:

Ronald Jones was found guilty of armed robbery and attempted murder by a jury in the circuit court of Will County, and sentenced to concurrent prison terms of 10 to 20 years and 20 to 40 years, respectively. Defendant, 15 years old at the time a juvenile delinquency petition was filed in the instant case, was tried as an adult. The appellate court affirmed the conviction for armed robbery but reversed and remanded for a new trial on the attempted-murder charge. (68 Ill. App. 3d 44.) We allowed the State's petition for leave to appeal (65 Ill. 2d R. 315). Two issues are raised. First, whether the convictions must be overturned because the circuit court's order permitting the defendant to be tried "under the criminal laws" (Ill. Rev. Stat. 1973, ch. 37, par. 702—7) was entered after the grand jury indicted the minor defendant. Second, whether the circuit court's attempted-murder and definitional murder instructions were in error so as to necessitate reversal of the conviction for attempted murder.

On November 5, 1975, defendant and George Williams, an adult who pleaded guilty to armed robbery and was found guilty of attempted murder in a separate trial, were armed with a shotgun and revolver, respectively, when they stopped their car behind the car of David Barker in a park. Barker, who was waxing his car when defendant and Williams approached, testified that the two took his wallet, and ordered him to drive his car with Williams seated beside him, and to follow the defendant, who drove the other car. After arriving at an abandoned house and as Barker was marched toward it, he felt several blows on the back of his head. He fell to the ground, where he felt another blow on the back of his head. He recalled being dragged, losing his glasses, being held in front of a flight of stairs, yelling for help, breaking a window, lying in the front yard of the abandoned house,

and being in the hospital.

Barker's treating physician testified Barker suffered four gunshot wounds at the back of his head, and his "back was peppered with buckshots." An Illinois Bureau of Investigation expert witness said that, although tests were inconclusive, the defendant had more than normal amounts of the residue of firearms on his hands.

The defendant admitted participating in the robbery but denied participating in the shooting. He testified as follows. After taking Barker's wallet, Williams and the defendant brought Barker to the abandoned house. Williams struck Barker on the back of the head with his gun. Both of them dragged Barker to the house, where Williams pushed Barker down a flight of stairs. Williams then gave the defendant a shell for the shotgun the defendant held and told the defendant to shoot Barker. The defendant refused, fled in Barker's car, abandoned it, but returned to it with Williams, whom he encountered after leaving Barker's car. The defendant said he did not know what Williams would do or had done after he left the abandoned house.

We turn to the first issue. On November 6, 1975, a juvenile delinquency petition was filed against the defendant. On November 19, 1975, the State moved to prosecute the defendant under the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 1—1 *et seq.*). The grand jury returned a true bill of indictment for armed robbery and attempted murder on December 12, 1975. The circuit court, on December 29, 1975, held a hearing on the State's motion to transfer. Defendant moved to quash the indictment for violation of the Juvenile Court Act's prohibition against criminal prosecution of minors (Ill. Rev. Stat. 1973, ch. 37, par. 702—7). The defendant contends the circuit court's failure to quash, and the appellate court's affirmance, are reversible error. We disagree. Section 2—7(3) of the Juvenile Court Act

6

provides:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, *a Juvenile Judge,* designated by the Chief Judge of the Circuit to hear and determine such motions, *after investigation and hearing but before commencement of the adjudicatory hearing,* finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) *whether there is sufficient evidence upon which a grand jury may be expected to return an indictment;* (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. ***" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3).)

We believe error has been committed by the return of an indictment prior to the circuit court's rendering a decision on the transfer motion, but we do not believe this error is reversible error here. The record unequivocally shows that the circuit court, in the course of its hearing on the motion and on the basis of its specific conclusions, made its findings "independent of" the grand jury's indictment. Moreover, the court specifically applied the six factors set out in section 2—7, emphasizing the first factor: "whether there is sufficient evidence upon which a grand jury may be expected to return an indictment." The evidence the court had before it at the time of the hearing, the record

again unequivocally shows, justified the court's transfer even though subsequent to the indictment. We do not condone this action, but it just is not reversible error here. The "ultimate determination" of prosecuting a juvenile as an adult is a judicial function; and the judiciary made that determination here, unlike in *People v. Rahn* (1974), 59 Ill. 2d 302, 304. We agree with the appellate court on this issue. 68 Ill. App. 3d 44, 49.

The second issue, addressed by the appellate court, involves the propriety of the specific instructions given on attempted murder. The State argues this issue has been waived because the defendant failed to preserve it in his post-trial motion. The State concedes, on the basis of *People v. Harris* (1978), 72 Ill. 2d 16, that the instructions were erroneous because the definitional instruction on murder—as distinguished from the "issue" or directive instruction on attempted murder—refers to both intent to do bodily harm and knowledge that one's acts may cause, or create the possibility of, bodily harm. Nevertheless, the State contends the error was not so plain, substantial or grave as to warrant our taking notice of it (58 Ill. 2d Rules 451(c), 615(a)). (*People v. Roberts* (1979), 75 Ill. 2d 1.) The intent to kill, the State continues, was clearly evidenced by the acts of the perpetrator and conceded to have existed by the defense, and only the factual question of whether the defendant was the perpetrator was at issue; the evidence was such that the defendant would have been found guilty even if correct instructions had been given (*People v. Ward* (1965), 32 Ill. 2d 253, 256). Because this issue remains a significant one and because the defendant here, unlike in *Roberts* above, objected to the instruction, we address ourselves to it.

Three instructions, affecting the charge of attempted murder, were given. First, the definitional attempted-murder instruction:

> "A person commits the crime of attempt who, with

intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.

The crime attempted need not have been committed."

Second, the directive attempted-murder instruction:

"To sustain the charge of attempt murder, the State must prove the following propositions:

that the defendant performed an act which constituted a substantial step towards the commission of the crime of murder;

that the defendant did so with intent to commit the crime of murder.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

Third, the definitional murder instruction:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death or great bodily harm to that individual."

The offense of attempted murder requires the mental state of specific intent to commit murder, to kill someone. Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)) clearly sets this out: "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." *Knowledge* that the consequences of an accused's act may

result in death (or grave bodily injury), or intent to do bodily harm, is not enough; specific intent to kill is required (*People v. Trinkle* (1977), 68 Ill. 2d 198, 201-04). Both the indictment and the instructions must unambiguously reflect this. (68 Ill. 2d 198, 201-04.) The offense of murder, on the other hand, does not always require specific intent to kill. Specific intent to do grave bodily harm or knowledge that one's actions will cause or could cause death or bodily harm are also sufficient mental states for murder. Ill. Rev. Stat. 1973, ch. 38, par. 9–1(a).

Although we do not agree the error was effectively waived, we do agree with the State that there was not grave or substantial error. "Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty." (*People v. Ward* (1965), 32 Ill. 2d 253, 256. Accord, *People v. Truelock* (1966), 35 Ill. 2d 189, 192. See also *People v. Stromblad* (1978), 74 Ill. 2d 35, 42; *People v. Farnsley* (1973), 53 Ill. 2d 537, 546. *Cf. People v. Chupich* (1973), 53 Ill. 2d 572, 579.) The defendant maintains, however, that this court has departed from the rule in *Ward* and *Truelock* and refrained from evaluating the evidence in cases where "the error was so fundamental" (*People v. Stromblad* (1978), 74 Ill. 2d 35, 42). It is true that in *People v. Trinkle* (1977), 68 Ill. 2d 198, *People v. Harris* (1978), 72 Ill. 2d 16, and *People v. Tamayo* (1978), 73 Ill. 2d 304, this court held the convictions should be reversed, and did not evaluate the evidence to determine whether the evidence was so overwhelming as to withstand the damage of the erroneous instructions on attempted murder. However, in those cases, the formation of intent to kill was at issue. Whether the defendants sufficiently formed the intent to kill was highly questionable. The facts in those cases, to the extent set out in this court's

opinions, either are unclear as to the formation of the intent to commit murder or demonstrate a lack of intent. Here, the intent to commit murder was blatantly evident from the circumstances (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578), even admitted by defense counsel. The victim was shot four times in the head, peppered with buckshot in his back, and had a shotgun pointed at him by the defendant. The only question was whether the defendant was the perpetrator or one of the perpetrators. The jury found he was. We would be remiss, on these facts, to hold the conviction should be reversed. Not only is the instant case distinguishable from *Trinkle* and its progeny (because the intent to kill was so evident here), but the error was minimized, unlike in *Trinkle,* by the trial court's giving an accurate directive attempted-murder instruction, followed by an inappropriately complete definitional murder instruction. We conclude the error in the jury instructions here was harmless. Accord, *People v. Seats* (1979), 68 Ill. App. 3d 889; *People v. Lindsay* (1978), 67 Ill. App. 3d 638.

For these reasons, the judgment of the appellate court is affirmed in part and reversed in part. Since other errors were assigned in the appellate court which were neither passed upon there nor argued here, the cause is remanded for their consideration.

*Affirmed in part and reversed in part and remanded, with directions.*