THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ELIJAH BAREFIELD, Defendant-Appellant.

Third District    No. 79-152

Opinion filed April 30, 1981.

68

Kenneth A. Grnacek, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Elijah Barefield, appeals from his convictions for armed violence and aggravated kidnapping. He was sentenced to eight years imprisonment for armed violence and four years for aggravated kidnapping, the sentences to run concurrently. He was acquitted of charges of armed robbery and attempted murder.

The defendant was 16 years old when he committed the acts for which he was tried. On June 16, 1978, a supplemental petition to revoke juvenile probation was filed. On June 28, 1978, the State filed a motion to remove from prosecution under the Juvenile Court Act, asking that the defendant be prosecuted as an adult. On that date, the juvenile court judge transferred the matter to the Chief Judge of the Twelfth Circuit for disposition of the motion to transfer. On July 11, 1978, a bill of indictment was returned against the defendant by the Will County grand jury in the adult criminal division, charging the defendant with the four crimes listed above. The four-count indictment was returned by the grand jury before the chief judge, who then set bail and ordered the capias or warrant of arrest to issue. Two days later, on July 13, 1978, the same chief judge held a hearing on the petition to transfer the case of defendant and a juvenile co-defendant, Jerry DeLoach, to the adult criminal division. The judge denied a motion to sever the transfer hearings of the two juveniles. After hearing testimony and argument, the court granted the State's petition to transfer. The defendant was tried as an adult, convicted, and sentenced as indicated.

The defendant's first contention on appeal is that the court erred in transferring him from juvenile to adult court after an indictment had

already been issued against him. The State concedes that such a procedure is contrary to law, but argues that the error was harmless and does not warrant reversal of the criminal convictions. Both the defendant and the State rely upon our supreme court's recent decision in *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343. In *People v. Jones*, the supreme court stated:

"We believe error has been committed by the return of an indictment prior to the circuit court's rendering a decision on the transfer motion, but we do not believe this error is reversible error here. The record unequivocally shows that the circuit court, in the course of its hearing on the motion and on the basis of its specific conclusions, made its findings 'independent of' the grand jury's indictment. Moreover, the court specifically applied the six factors set out in section 2—7 [Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3)] * * * The evidence the court had before it at the time of the hearing, the record again unequivocally shows, justified the court's transfer even though subsequent to the indictment. We do not condone this action, but it just is not reversible error here." 81 Ill. 2d 1, 6-7, 405 N.E.2d 343.

The transfer hearing involved here is governed by section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7), which states:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on the motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

■■ At the transfer hearing, no occurrence witnesses testified. However, two investigating officers testified as to statements of the victims and of the persons accused. "The rules of evidence shall be the same as under section 5—1 of this Act * * *." (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)(a).) Section 5—1 of the Juvenile Court states,

> "[T]he court shall hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of is probative value, even though not competent for the purposes of the adjudicatory hearing." (Ill. Rev. Stat. 1977, ch. 37, par. 705—1(1).)

"The use of documentary or testimonial evidence of a reliable nature, even though hearsay, constitutes a much less time-consuming method of proof very nearly essential to this type of hearing. Its use in that context is not, in our judgment, constitutionally impermissible." *People v. Taylor* (1979), 76 Ill. 2d 289, 305, 391 N.E.2d 366.

The evidence admitted at the transfer hearing tended to show that on the night of June 15, 1978, the defendant was in Chicago, in the company of his cousin, 16-year-old Jerry DeLoach, and a 21-year-old man named Leonard Meyers. They experienced car trouble and began walking down the Stevenson Expressway (I-55). They were offered a ride by two young men, Kevin Jensen and Melvin Schmidt, who were returning to Will County from a White Sox game. The three stated that they wanted a ride to Lockport, but Jensen, the driver, told them that he did not have sufficient gasoline to take them that far. One of the three men suggested that they siphon some gas. The three were admitted into the car and sat in the back seat. They proceeded southwest on I-55 and turned off toward Hinsdale. They stopped and one of the riders siphoned some gas from a parked car. They drove back to the highway and pulled over at the Old Chicago amusement park-shopping center. Jensen told his new passengers that he had to return home and would take them no further. Meyers then pulled a knife and placed it near Schmidt's throat. The defendant held a gun to Jensen's head. Meyers then informed Jensen and Schmidt that he expected to be taken all the way to Lockport. A struggle ensued and Schmidt received a 6-inch cut to the throat. Schmidt was also struck on the head with a pistol. Jensen began driving and continued until the car ran out of gasoline. One of the investigating officers testified that he had witnessed a statement made by the defendant, Barefield, in which the defendant stated that Meyers, when told that they would only be taken as far as Old Chicago, whispered to Barefield that they were going to be taken all the way to "the projects" (in Lockport). Meyers told

Barefield that, when the car stopped, he (Meyers) would put a knife to the throat of Schmidt and that Barefield was to hold a gun to the head of the driver. Apparently, Meyers was true to his word and Barefield responded as requested. After Schmidt was cut, DeLoach grabbed the gun away from Barefield and everyone exited the automobile. Meyers then asked for money and Jensen handed him five dollars. DeLoach and the defendant fled on foot in one direction, while Meyers fled in another.

Additional testimony elicited at the hearing revealed that the defendant had a history of unruly behavior. This was attributed to organic brain syndrome, the result of a head injury. The behavioral problems had been effectively controlled by drugs. However, the defendant had stopped taking the medication and had continued getting into trouble at school. He had been committed to the Department of Corrections by the Juvenile Court of Will County on May 26, 1977, subsequent to an adjudication of delinquency on a burglary charge.

■■ The evidence presented at the transfer hearing supported the conclusion of the court that "the offense was committed in an aggressive and premeditated manner." The court also stated that it "considers the age of the minors, the previous history of the minors, whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minors. And the Court also considers that the best interest of the minor and of the public requires the minors to continue in custody or under supervision for a period extended beyond his minority." All of these conclusions were supported by the evidence. No formal statement of the juvenile court judge's reasons for authorizing the transfer is necessary. All that is required is the preservation of a record which will allow a meaningful review of the juvenile court judge's exercise of discretion. (*People v. Taylor* (1979), 76 Ill. 2d 289, 300-01, 391 N.E.2d 366; *People v. Cater* (1979), 78 Ill. App. 3d 983, 986, 398 N.E.2d 28.) The record in the present case is sufficient for our meaningful review and supports a conclusion that the trial court did not abuse its discretion in the case at bar.

The only problematic conclusion of the court was its statement that "the Court considers that the evidence is sufficient upon which a grand jury may be expected to return an indictment." An indictment had already been entered by the same judge three days previously. However, it is clear from the record that the evidence presented at the transfer hearing did support the conclusion that a reasonable grand jury, presented with competent evidence consistent with that presented at the transfer hearing, would likely enter a true bill. The evidence the court had before it at the time of the hearing justified the court's transfer, even though subsequent to the indictment. "The 'ultimate determination' of

prosecuting a juvenile as an adult is a judicial function; and the judiciary made that determination here * * *." *People v. Jones* (1979), 81 Ill. 2d 1, 7, 405 N.E.2d 343.

■■■ Contrary to the appellant's assertion, there is nothing in the record indicating that the court had made its determination prior to the close of the evidence. The court did not act improperly when it ruled, for the sake of judicial economy, that the transfer hearings of the defendant and Jerry DeLoach be consolidated and that hearsay testimony be admitted. While both of these decisions might be erroneous at trial, "one must understand the nature of the proceeding. The salient feature of the transfer hearing * * * is that it is not adjudicatory in nature."

"Regardless of the importance of such a hearing to the juvenile, it does not determine guilt or innocence. Rather, as the statute recognizes, the hearing is dispositional in nature, determining the forum in which guilt or innocence is to be adjudicated. * * * '[T]he sole purpose of the transfer hearing * * * is to determine "whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult." * * * [T]his purpose may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at the juvenile court delinquency hearing.' * * * We hold that under our statute the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted.

As regards the standard of proof, we note that the Uniform Juvenile Court Act suggests only a probable cause standard." *People v. Taylor* (1979), 76 Ill. 2d 289, 302-04, 391 N.E.2d 366.

■■ The record does not support the appellant's contention that the ruling of the court, transferring the cause from juvenile to criminal court, was a foregone conclusion prior to the close of the evidence. The evidence adduced at the hearing, by itself, supports all of the statutorily required conclusions reached by the court. There is no showing that the court abused its discretion. While "we do not condone" the entry of an indictment prior to the juvenile transfer hearing, "it just is not reversible error here." *People v. Jones* (1979), 81 Ill. 2d 1, 7, 405 N.E.2d 343.

The defendant next contends that his conviction and sentence for armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1 *et seq.*) must be reversed because, in this cause, the charge of armed violence was predicated on the offense of aggravated battery. "A person commits armed

violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) The indictment charged the defendant, *inter alia*, with having "aided and abetted Leonard Meyers in the commission of the offense of Armed Violence" in that "Leonard Meyers, while armed with a dangerous and deadly weapon, to-wit: a knife with a blade longer than 3″, intentionally, without legal justification, caused bodily harm to Melvin Schmidt, by cutting the neck of said Melvin Schmidt." A person commits battery if he intentionally or knowingly without legal justification and by any means, causes bodily harm to an individual. Battery is a Class A misdemeanor. (Ill. Rev. Stat. 1979, ch. 38, par. 12—3.) A person who, in committing a battery, commits aggravated battery if he uses a deadly weapon. Aggravated battery is a Class 3 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1) and (e).) It is clear from the indictment that the armed violence charge against the defendant was predicated upon his accountability for a "deadly weapon" type of aggravated battery committed by Leonard Meyers.

The defendant argues that the employment of the deadly weapon enhanced the charge from misdemeanor battery to felony aggravated battery, and that the employment of the same deadly weapon enhanced the crime from aggravated battery, a Class 3 felony, to armed violence, a Class X felony. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3(a).) He argues that this double enhancement is contrary to the legislative intent in enacting the armed violence statute and deprives him of due process of law.

■■ The defendant in this cause relies, for his appellate argument, on the defendant's brief in *People v. Van Winkle*, now on appeal before our supreme court. (No. 53903, petition for leave to appeal granted January 30, 1981.) The decision now under appeal in *Van Winkle* was rendered by this court in *People v. Van Winkle* (1980), 86 Ill. App. 3d 289, 408 N.E.2d 29, wherein we upheld the application of the armed violence statute to an underlying offense of "deadly weapon" aggravated battery. As the supreme court has not yet decided the issue, we see no reason to depart from a rule of law established by this court just months ago.

■■ Furthermore, this issue, having been raised for the first time on appeal, is not properly preserved and is deemed waived. *People v. Black* (1972), 52 Ill. 2d 544, 551, 288 N.E.2d 376, *cert. denied* (1973), 411 U.S. 967, 288 N.E.2d 376.

For the reasons indicated, the judgment of the Circuit Court of Will County is hereby affirmed.

Affirmed.

STOUDER and HEIPLE, JJ., concur.