THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILLY BRYANT, Defendant-Appellant.

First District (5th Division) No. 82—1338

Opinion filed March 30, 1984.

Steven Clark, of State Appellate Defender's Office, and Robert B. Morton, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago, for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of two counts of attempted murder (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 9—1) and two counts of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)), and sentenced to 12 years' imprisonment. On appeal, defendant contends that: (1) the State produced insufficient evidence to establish his guilt beyond a reasonable doubt; (2) the trial court erroneously instructed the jury concerning the elements of attempted murder; (3) the State injected improper testimony and improper comment violative of his right to a fair trial; (4) the trial court erroneously entered judgment on the lesser-included offense of aggravated battery; and (5) the sentence was excessive. For the reasons stated below, we affirm in part and vacate in part.

The following facts were adduced at trial. At 8:30 p.m. on Sunday, May 17, 1981, a group of young men were playing dice on the sidewalk outside a tavern located on the northeast corner of Huron and Avers streets in Chicago, Illinois, when gunfire from an automobile struck two of the young men. Rodney Harper suffered a bullet wound to the head, and awoke from a months-long coma unable to walk or talk; 16-year-old Kenneth Martin suffered multiple bullet wounds to his arm and chest, and at the time of trial, a bullet remained lodged in his body. The victims testified that they did not see who shot them.

Marion Carney was an area resident and army reservist in May of 1981; he was a private on active duty at the time of trial. Sunday evening, May 17, 1981, Carney spoke with friends inside the tavern for

10 or 15 minutes, bought a quart of beer, and left. Outside the tavern, he observed a four-door automobile with four occupants stopped in the street near the dice game. Carney testified that he recognized the rear passenger side occupant, whom he had seen several times before, and identified that occupant as the defendant. Defendant asked where he could buy some "reefer," and when no one responded, asked again. One of the group on the corner then responded, and defendant asked twice for more specific directions. Carney testified that after this exchange, defendant conversed with other occupants of the car for 10 or 15 seconds, called out to the group on the sidewalk, made a sign representing the Vice Lords street gang, and opened fire with a handgun. Joined by the front seat passenger, they fired about nine shots and drove away.

Carney called the police, and immediately named and described defendant. He also described the front seat passenger as a 23- or 24-year-old male, dark complected, with a moustache and beard. Although he saw the faces of all four occupants, he recognized only defendant. Carney identified defendant in a photographic array that night, and picked defendant out of a lineup at 4:15 a.m. the morning of May 19, 1981. On cross-examination, Carney denied membership in any gang.

Chicago police detective James Dwyer testified that Marion Carney identified defendant in a lineup. Officer John Patton stated that he arrived at the scene of the shooting one minute after a radio call, and that the scene was illuminated by three lighted tavern signs and by a street lamp located on the northwest corner of Huron and Avers streets.

Detective James Cornelison testified that he went to the corner of Huron and Avers on May 17, 1981, and that when he arrived it was night. He characterized the lighting as "good," and stated that the corner was lit by a street lamp and a sign. Cornelison stated that he spoke with Marion Carney and "another witness who didn't wish to give his name." The trial court overruled defendant's objection, but warned that it would sustain objection to any statement made by the unnamed person. Cornelison indicated that he, Marion Carney, and the unnamed witness went to 620 North Kedzie, then to the 500 block of North Kedzie, where Cornelison noted the license and registration numbers of an automobile in an empty lot. He then left the unnamed witness near the scene, took Marion Carney to police headquarters, and presented Carney with the photographic array.

On cross-examination, Cornelison stated that the automobile in the vacant lot did not fit the description of the car involved in the

shooting. Defendant asked four questions about the "unidentified individual," inquiring whether the detective habitually had unidentified people in his car. On redirect, the trial court overruled defendant's objection and permitted Cornelison to testify that the unidentified person was afraid to give his name.

The defendant's case consisted of four witnesses. Defendant called Chicago police detective James Dwyer, who testified that defendant had given him an alibi, but that he had been unable to confirm it. Mary Bryant, defendant's mother, stated that defendant had said that he would be at Denise's house on Sunday, May 17, 1981. She indicated that after defendant's arrest, she tried to find Denise's house at 1014 North Cleveland, but finally discovered at at 1410 North Cleveland.

Jessie Holliman testified that her daughter, Denise, was defendant's girlfriend, and that defendant spent Sunday, May 17, 1981, between 5:00 and 10:30 p.m. with her family at 1410 North Cleveland. Henry Holliman, Denise's father, corroborated this alibi testimony. On cross-examination, the Hollimans admitted that they had been unable to recall the date of defendant's visit when interviewed earlier in the week by the assistant State's Attorney. Although the Hollimans knew soon after defendant's arrest that he was charged with a serious crime committed on May 17, 1981, they made no effort to contact the police or State's Attorney's office.

In closing arguments, the prosecution and defense agreed that the case turned on Marion Carney's identification. The prosecutor stated:

> "You saw Marion Carney testify. The way he testified was straightforward. He was polite. He was an honest young man. That guy could not make up a story, come in and tell it straight a year later if his life depended on it."

Defendant's objection was overruled, and the prosecutor then reiterated his argument and concluded by attacking the credibility of the alibi witnesses. Defense counsel argued that the unidentified man in the police car was fabricated in order to bolster Marion Carney's identification and that the police helped Carney to identify defendant. During rebuttal, the prosecutor said:

> "Mr. Burke also suggested to you that Detective Cornelison *** somehow fabricated this unidentified person who he was driving around *** [B]ut this is the west side of the City of Chicago. And when people go like this, people get afraid. People are afraid to come into court and testify."

The trial court overruled defendant's objection. Later, the prosecutor argued that Kenneth Martin was afraid to look at defendant, and repeated that people are afraid to get involved. The prosecutor

also commented on the defendant's failure to produce additional alibi witnesses.

The trial court gave the jury three instructions concerning attempted murder. First, the definition of attempt:

"A person commits the offense of attempt when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward commission of the offense of murder.

The offense attempted need not have been committed."

Second, the definition of murder:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death; he intends to kill that individual or another; or he knows that such acts will cause death to that individual or another."

Third, the "issue" or directive attempted murder instruction:

"To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed an act which constituted a substantial step toward the commission of the offense of murder; and

*Second*: That the defendant, or one for whose conduct he is legally responsible, did so with intent to commit the offense of murder.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Following deliberations, the jury returned verdicts of guilty on two counts of attempted murder and two counts of aggravated battery. Judgment was entered on all the verdicts, and the trial court sentenced defendant to 12 years' imprisonment on each count of attempted murder, to be served concurrently. The court expressly imposed "no sentence on the aggravated battery conviction inasmuch as that was a single act encompassed by the conviction and sentence on the greater offense."

OPINION

Initially, we address defendant's contention that the State produced insufficient evidence to establish his guilt beyond a reasonable

doubt. The parties concur and the record confirms that the jury's verdict turned upon Marion Carney's identification as against the Hollimans' alibi testimony. Defendant argues that the identification evidence was doubtful and the alibi was unimpeached, giving rise to a grave and substantial doubt as to defendant's guilt. The State maintains that the identification was not doubtful and that defendant's alibi was impeached.

A reviewing court will not substitute its judgment for that of the trier of fact in matters of weight, credibility, or conflicting evidence, and will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Where a positive identification irreconcilably conflicts with alibi evidence, it is the peculiar prerogative of the trier of fact to ascertain the truth. (See *People v. Hammond* (1970), 45 Ill. 2d 269, 259 N.E.2d 44.) The reliability of an identification is tested by the totality of circumstances, including the witness' opportunity to view the perpetrator, degree of attention, accuracy of description, certainty and time elapsed between commission of the crime and identification. *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

In the case before us, the totality of circumstances fully supported Marion Carney's identification of defendant. He had an excellent opportunity to view defendant before and during the crime, focusing his attention from the beginning of the marijuana conversation until he sought cover from gunfire; he immediately named and accurately described defendant as one of the perpetrators, and described the others; and, in addition to the trial identification, he positively identified defendant from a photographic array within six hours of the crime and from a lineup within 32 hours. Further, Marion Carney's identification was strengthened to the extent of his prior acquaintance with defendant. (See *People v. Reynolds* (1978), 57 Ill. App. 3d 593, 598, 373 N.E.2d 650.) Here also, the Hollimans' alibi testimony was undercut by their relation to defendant, their failure to come forward before trial, and their questionable memory for dates. Consequently, defendant's reliance upon *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232, is misplaced. In that case, the witness' initial, meager description of the perpetrator was inconsistent with her trial testimony and with defendant's appearance, while defendant's alibi was not impeached. By contrast, the jury in this case was justified in resolving the evidence against defendant, and we hold that its verdict

was supported by sufficient evidence.

Defendant next contends that the jury was erroneously instructed concerning the specific intent element of attempted murder. He argues that the murder definition permitted the jury to convict him if it found that he had a state of mind less than intent to kill, namely, knowledge that his acts would cause death. The State asserts that there was no error, or that the error was harmless. We agree.

It is settled that intent to kill is an essential element of attempted murder. (*People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) However, the certainty of this rule suffers from the variety of mental states ascribed to the word "intent," as a legal term and in common usage. (See La Fave & Scott, Criminal Law secs. 28, 59 (1972).) Historically, the crime of attempted murder roughly corresponded to an incomplete murder, and the intent required for attempted murder was "that wanton and reckless disregard of human life that denotes malice." (*Weaver v. People* (1890), 132 Ill. 536, 540, 24 N.E. 571; *People v. Shields* (1955), 6 Ill. 2d 200, 206, 127 N.E.2d 440.) As a corollary to this theory, it was thought proper to instruct juries as to the elements of attempt and the elements of murder. See *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.

More recently, our supreme court has foreclosed from the jury's consideration mental states which would be sufficient to sustain the completed crime of murder, but which are insufficient to support the finding of specific intent required to convict of attempted murder. In *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903, the court held that the felony murder mentum could not support a charge of attempted murder. In *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, the jury was instructed in both the murder definition and the "issue" or directive instruction that defendant was guilty if he knew that his acts " 'created a strong probability of causing death or great bodily harm ***.' " (68 Ill. 2d 198, 200, 369 N.E.2d 888.) The *Trinkle* court held that these instructions permitted the jury to convict without finding specific intent to kill. In *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the court reversed defendant's conviction because the definition of murder included intent to do great bodily harm.

We believe that these cases, and others cited by defendant, are distinguishable. The instruction at issue did not permit the jury to convict based on intent to inflict great bodily injury or knowledge that his acts created a strong probability of death or great bodily harm. Rather, the instructions required the jury to find that defendant in-

tended to commit murder, and narrowly defined murder as acting with intent to kill or with knowledge that he would cause death. The instructions, when considered as a whole, properly stated the law. See *People v. Kolep* (1963), 29 Ill. 2d 116, 193 N.E.2d 753.

Several appellate court cases support our conclusion that the instant instruction was proper. *People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816, involved a definitional murder instruction which included knowledge that defendant's acts would cause death, and knowledge that his acts created a strong probability of death. Reasoning that the instruction properly focused upon the defendant's state of mind relative to death and not great bodily injury, the court ruled that the instruction properly informed the jury of the intent required to convict for attempted murder. Accord, *People v. Olbrot* (1982), 106 Ill. App. 3d 367, 435 N.E.2d 1242; see also *People v. Hancock* (1980), 83 Ill. App. 3d 700, 704 n.1, 404 N.E.2d 914.

In addition, we believe that any error in the attempted murder instruction was harmless. Soon after *Harris*, the supreme court in *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343, ruled that an erroneous intent instruction does not warrant reversal where intent to kill is evident from the circumstances. In reaching its conclusion, the court noted that the issue in the case was whether defendant was one of the perpetrators, not whether defendant had the requisite intent, and that accurate definitional attempt and directive attempted murder instructions lessened the impact of an erroneous definitional murder instruction. (81 Ill. 2d 1, 9-10, 405 N.E.2d 343.) Courts have also considered the number of shots, range, and general target area in assessing the strength of intent evidence. (See *People v. Dallas* (1980), 85 Ill. App. 3d 153, 176-77, 405 N.E.2d 1202, *cert. denied sub nom. Cooper v. Illinois* (1981), 450 U.S. 1000, 68 L. Ed. 2d 202, 101 S. Ct. 1708; *People v. McClure* (1979), 80 Ill. App. 3d 10, 16-17, 398 N.E.2d 1233.) Defendant and the other perpetrator in this case fired nine shots into a group of youths from a distance of 20 to 25 feet, striking their victims in the head and chest. No issue of intent was raised at trial; instead, the case turned upon identification of defendant as against his alibi. It is clear to us that the deletion of the phrase in question would not have altered the jury's deliberation, and the error, if any, was harmless.

Defendant claims next that improper testimony and comment entitles him to a new trial. Specifically, defendant directs our attention to testimony and comment concerning the "unidentified witness," to closing argument comment upon Marion Carney's credibility, and to comment that defendant should have called additional alibi witnesses.

The State argues that error was waived, that testimony and comments were proper, and that any prejudice was cured by the trial court. We address defendant's contentions individually.

▉ Detective Cornelison testified that he spoke with a "witness" who did not give his name; they then drove to a certain address, observed an automobile in a nearby lot, and Cornelison dropped the "witness" off. Generally, a police officer may testify to personal knowledge of procedures, activities and circumstances of an investigation. (*People v. Dunning* (1980), 88 Ill. App. 3d 706, 410 N.E.2d 1052; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247.) The fact that a witness had a conversation is not hearsay, and the failure to identify other participants is not error; such a conversation is admissible in order to explain the witness' subsequent conduct. (*People v. Agee* (1980), 85 Ill. App. 3d 74, 405 N.E.2d 1245.) The instant case illustrates the propriety of such testimony: Cornelison testified from personal knowledge as to facts relevant to investigatory procedures and to the time elapsed before Marion Carney identified defendant's photograph. There was no error.

▉ ▉ On redirect examination, Cornelison testified that the reason the person was not identified was that he was afraid. Defendant argues that this was irrelevant hearsay, the prejudice of which was compounded by comment in closing argument. Statements that establish the declarant's state of mind are excepted from the hearsay rule and admissible provided that the declarant is unavailable and the statement's truth is reasonably probable. (*People v. Lang* (1982), 106 Ill. App. 3d 808, 814, 436 N.E.2d 260.) Here, the unidentified person expressed his unwillingness to testify at trial by refusing to give his name to the police. The gang-related nature of the crime indicates that the statement was probably true. And because defendant attacked the story as unusual on cross-examination, the testimony became relevant to explain an otherwise unusual situation. We hold that the statement was properly admitted, hence comment upon it in closing argument was also proper.

▉ Defendant asserts that the prosecutor vouched for Marion Carney's credibility. The State rejoins that any error was waived, and that the comments were proper. Defendant failed to raise these remarks in his motion for a new trial and deprived the trial court of an opportunity to consider the issue; error was waived thereby. (See *People v. Turk* (1981), 101 Ill. App. 3d 522, 532-33, 428 N.E.2d 510.) Moreover, a prosecutor may suggest to the jury that the evidence shows certain testimony to be credible or incredible. (*People v. Crossno* (1981), 93 Ill. App. 3d 808, 823, 417 N.E.2d 827.) The assist-

ant State's Attorney argued Marion Carney's credibility to the jury without injecting his personal or professional reputation, and so defendant's reliance upon *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, is misplaced. We hold that these remarks were proper, or if improper, were waived.

■ Defendant's argument with respect to improper comment closes with his contention that the prosecutor implied that defendant should have called additional alibi witnesses. Our supreme court recently considered a similar contention in *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247. Noting that authority conflicted on the point, the court concluded that where a defendant injects alibi witnesses into the case, the prosecutor may comment on the lack of supporting evidence, but may not rely upon such lack of evidence as proof of the charge. (94 Ill. 2d 437, 496-98, 447 N.E.2d 247.) We believe that *Kubat* is dispositive of defendant's contention. Defendant elicited testimony to the effect that five other members of the Holliman family, including Denise and in addition to Mr. and Mrs. Holliman, were with defendant at the time of the shooting. The assistant State's Attorney commented on defendant's failure to call them, but the State clearly relied upon Marion Carney's identification as proof of the charge. In sum, we find defendant's claims of improper testimony and comment to be without merit.

■ Defendant next contends that the trial court erred when it entered judgment upon guilty verdicts for aggravated battery, because that charge is a lesser-included offense of attempted murder. The State concedes that the *mittimus* must be modified, but resists defendant's contention that the case should be remanded for resentencing. *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, is analogous. In that case, the defendant argued that judgment entered upon the lesser-included offense of indecent liberties might prejudice him where he was convicted and sentenced for rape. The court noted that the sentence was expressly limited to the offense of rape, and vacated the judgment for indecent liberties. (56 Ill. 2d 493, 495-96, 309 N.E.2d 1.) Neither judgment nor sentence may be entered for aggravated battery where the same act forms the basis for conviction and sentence for attempted murder. (See *People v. Camacho* (1979), 71 Ill. App. 3d 943, 956, 389 N.E.2d 1213.) The trial court recognized that no sentence could be imposed for aggravated battery, and imposed sentence for attempted murder. Accordingly, we need only vacate the judgments of conviction entered on the aggravated battery counts.

■ Finally, defendant contends that his sentence was excessive. He states that he was 19 years old at the time of sentencing, that he

was employed, had no prior felony convictions and no juvenile record. The State maintains that concurrent sentences of 12 years' imprisonment were justified based on the unprovoked, gang-related nature of this violent crime, which inflicted serious harm on two victims and endangered others. The trial court is in a superior position to assess the many factors relevant to sentencing, and a reviewing court may not alter the trial court's sentence absent abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The record reveals that the trial court considered all of the facts urged here by defendant and the State, and weighed these facts in the context of the seriousness of the offense and defendant's potential for rehabilitation. (See Ill. Const. 1970, art. I, sec. 11.) We note further that the trial court observed the defendant's demeanor throughout the trial. We cannot say that the trial court abused its discretion by the sentence imposed in this case.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

MEJDA, P.J., and SULLIVAN, J., concur.