**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170763-U

Order filed June 15, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0763 Circuit No. 17-CF-184 |
| | ) | |
| PORTIA J.L. PROKESH, | ) ) | Honorable Kevin W. Lyons |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justice Carter concurred in the judgment.
Justice Wright dissented.

_____

**ORDER**

¶ 1     *Held*:   State failed to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault where there was no evidence charged act took place when defendant was 16 years old as alleged in the indictment.

¶ 2     Defendant Portia Prokesh was found guilty by a jury of aggravated criminal sexual assault. The trial court sentenced Portia to an 18-year term of imprisonment. She appeals both her conviction and sentence. We reverse her conviction.

¶ 3                                    FACTS

¶ 4        Defendant Portia Prokesh was charged with aggravated criminal sexual assault. 720 ILCS 5/11-1.30(b)(i) (West 2016). The indictment stated that Portia, "a person of at least 16 years of age but under 17 years of age, knowingly performed an act of sexual penetration upon: [C.P.] a person born August 15, 2008 who was under 9 years of age when the act was committed."

¶ 5        Defense counsel sought the appointment of an expert to determine Portia's fitness to stand trial. The trial court granted counsel's request, stating it had a *bona fide* doubt as to Portia's fitness. Portia was evaluated and found fit to stand trial. Jury selection took place. The State used peremptory challenges to remove four jurors. Defense counsel challenged the State's use of peremptory challenges to strike two out of three African Americans, asserting a pattern of discriminatory conduct. The trial court determined the State did not engage in a pattern of discriminatory conduct.

¶ 6        The trial ensued. James Prokesh testified. He was Portia's adoptive father. Portia came to live with his family in 2005. James was married and had three daughters and a son, C.P., who was born August 15, 2008. In March 2017, Portia told him that she had been sexually touching C.P., including performing oral sex, and that the sexual conduct had been occurring for some time. James immediately questioned C.P. about Portia's admission. C.P. confirmed that Portia had performed oral sex on him. James called the police. Both Portia and C.P. told him the assaults had been occurring for some time. James described that Portia's demeanor when she made the admission to him suggested that she enjoyed telling him.

¶ 7        C.P. testified he was nine years old at the time of trial. He had four sisters, including Portia. He defined "sex" and said Portia touched his penis when he was eight years old. She began touching his penis when he was four years old and continued to do so until he was eight years old.

2

She last performed oral sex on him in 2016 when he was in third grade and the weather was hot. He described the last incident in detail, explaining that Portia took him to her bedroom, pulled down both her pants and his pants, laid on the floor, shook his penis, got on top of him, put her tongue in his mouth, and his penis went into her butt. His penis did not make contact with her vagina. The conduct lasted two to three minutes. Similar acts had taken place at least seven previous times. He did not tell anyone about it because he was afraid Portia would hurt him. Portia eventually confessed to his father. On cross-examination, C.P. said he and Portia had sexual contact 8 to 10 times. The last instance took place when he was in middle of third grade, which would have been December 2016 or January 2017, and the weather was hot.

¶ 8        Denise White, a detective with the Peoria Police Department, testified that she interviewed Portia. A redacted portion of the interview was played for the jury. The video showed Portia admitting she had sex with C.P. during the period when he was three to eight years old. She described the sexual acts as both vaginal and oral penetration. According to Portia, she and C.P. engaged in sexual conduct multiple times. The first instance happened when C.P. was three years old and she pulled down his pants and took out his penis. The last time they had sex was during Christmas break in 2016.  On that occasion, the two kissed on the couch, then went to her room where they engaged in sex for two to three minutes. She described other incidents spanning the years when C.P. was three to eight years old. In her estimation, she and C.P. had engaged in sex more than 30 times and had oral sex more than 10 times.

¶ 9        Portia testified as the only witness in her defense. She was born October 22, 1999, and was adopted by James. C.P. was her adoptive brother. She denied that any of the statements in her interview were true. She only made the statements because she had witnessed those things herself. She denied she had sex with C.P.

3

¶ 10        Closing arguments took place. The State submitted that Portia was hazy about the last incident of sexual abuse because it had been occurring for five years, that Portia's age when the sexual activity took place was not in dispute, and that Portia had been committing sexual assault against C.P. for a long time and for at least all of 2016.

¶ 11        The jury was instructed, in part, that one proposition it was charged with finding was whether the State proved that Portia was under age 17 and C.P. was under age 9 when the charged act took place. Following deliberations, the jury returned a guilty verdict.

¶ 12        Portia moved for a new trial and the trial court denied the motion. Sentencing took place. Portia addressed the court and expressed remorse. She stated her trial testimony was true, to which the court stated that Portia had not made a good start, that she had had an opportunity but "blew it" by lying on the witness stand. The court stated it would consider the uncharged conduct in fashioning the sentence. The court said it considered the appliable factors in aggravation and mitigation. It did not expressly state it had considered the additional statutory juvenile mitigating factors. The court sentenced Portia to an 18-year term of imprisonment. Portia moved to reconsider her sentence, asking for a lesser sentence because of her age. The court responded that it had considered Portia's age when it determined the sentence and denied her motion. She timely appealed.

¶ 13                                              ANALYSIS

¶ 14        There are five issues on appeal, including whether: (1) Portia was proven guilty beyond a reasonable doubt, (2) the jury was improperly instructed, (3) the fitness hearing was adequate, (4) Portia's Batson challenge was properly considered, and (5) mitigating factors were not given sufficient weight.

4

¶ 15    We turn first to Portia's claim that the State's evidence was insufficient to prove her guilty beyond a reasonable doubt of aggravated criminal sexual assault. Portia contends that her conviction should be reversed because the State did not prove beyond a reasonable doubt that she was 16 years old when the charged incident occurred as the indictment alleged. She maintains that the charged act of sexual assault occurred after she had turned 17 years old and thus the State could not prove the allegations against her.

¶ 16    The State is required to prove beyond a reasonable doubt all essential elements of an offense. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004)). Where the evidence creates a reasonable doubt of a defendant's guilt, a conviction cannot stand. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). In addressing a claim of insufficient evidence, the reviewing court considers whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact would have found the State proved the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 17    To sustain a conviction for aggravated criminal sexual assault under section 11-1.30(b)(i) of the Criminal Code of 2012, the State must establish the defendant is under age 17 and commits an act of sexual penetration with a victim who is under the age of 9. 720 ILCS 5/11-1.30(b)(i) (West 2016). The indictment expressly alleges that Portia committed the charged act when she was "at least 16 years of age but under 17 years of age." Portia turned 17 on October 22, 2016 and she asserts that the charged act took place after her birthday. In her recorded statement, Portia said the offense occurred during Christmas break in 2016. C.P. testified that he turned eight years old in August, and the charged act took place when he was eight years old, during the middle of the school year, when he was in third grade. C.P. named his third-grade teacher. He agreed the school

5

year ran from August to May and the middle of the school year would be December or January. C.P. stated it was hot outside when the incident occurred.

¶ 18    Portia asks this court to consider National Oceanic & Atmospheric Administration weather records from the Peoria International Airport for December 2016 and attached the records to her reply brief. See *People v. Mitchell*, 403 Ill. App. 3d 707, 709 (2010) (reviewing court may take judicial notice of government records). We will not review the weather records. See *People v. Boykin*, 2013 IL App (1st) 112696, ¶ 9 (although reviewing court may take judicial notice of a fact that the trial court did not, it may not take judicial notice of critical evidentiary materials that were not presented at trial). The State's proof that the charged act occurred prior to Portia's 17th birthday in October 2017 centers on C.P.'s testimony that the weather was hot. The State's reliance on the weather being hot as indicative of when the charged act occurred is contradicted by the record.

¶ 19    In a hearing on Portia's motion for the appointment of an expert, the parties agreed the alleged incident took place sometime in late 2016 before New Year's Day. In its opening statement, the State argued that it charged Portia with dates covering all of 2016 because the abuse "had been going on consistently for most of this young child's life leading up to 2016[,]" that C.P. had told his father it "had been going on for quite some time," and that the State charged the abuse "in a range over the whole span of 2016." In closing argument, the State argued the conduct had been "going on all over 2016" and that Portia had been committing acts "at least of [*sic*] all of 2016."

¶ 20    The State's claims that the charged act took place when Portia was 16 years old were not supported by the evidence presented to the jury. Because of the way the State charged the offense in this case, it was necessary for the State to demonstrate that Portia committed the acts against C.P. at a time during 2016 when she was 16 years of age. Since Portia turned 17 years old on

October 22, 2016, the State had to demonstrate the conduct occurred between January 1, 2016, and October 21, 2016. Portia said the act took place during Christmas break of the 2016-2017 school year. C.P. said the assault occurred when the weather was hot and he was in the middle of third grade. Upon further questioning, C.P. stated the middle of the school year would be December and January. The State argues C.P.'s testimony that it was hot raises an inference that necessitates a conclusion that the conduct did not happen in the middle of the school year as C.P. and Portia stated, but rather had to have taken place prior to October 22, 2016. We disagree that any such inference can be drawn from C.P.'s testimony or sustain a conviction.

¶ 21    Significantly, the evidence at trial consisted of references to prior acts of criminal sexual assault allegedly committed by Portia when she was younger than 16 years old and C.P. was younger than 8 years old. C.P. testified regarding the prior acts and Portia discussed them in the statement she gave the police. The State did not explain and the jury was not instructed that it was limited to the time period during 2016 when Portia was 16 years old in order to find her guilty as charged in the indictment. The jury was instructed only that Portia had to be under the age of 17 and C.P. under the age of 9. It was not told Portia had to be 16 years of age. Because of the specificity of the indictment, the State's evidence about acts that took place outside of the specific time frame alleged in the indictment cannot be used to satisfy its burden of proof. Instead, evidence of behavior outside the timeframe was admitted and argued. On the evidence presented, it is impossible to know whether the jury convicted Portia of the charged act or on the evidence presented on acts that occurred prior to her 16th birthday or after she turned 17 years of age.

¶ 22    We find none of the evidence presented by the State was sufficient to establish that the charged act took place while Portia was 16 years of age. In fact, the evidence points to the conclusion that the charged act occurred toward the end of the calendar year, after Portia's October

7

birthday when she turned 17 years old. It was the State's burden to prove that Portia was 16 years old when she committed the charged offense. It did not do so. We find the State failed to prove Portia guilty beyond a reasonable doubt of aggravated criminal sexual assault of C.P. when she was 16 years old and we reverse her conviction.

¶ 23     Because we reverse Portia's conviction outright, we will not address the other issues she raised on appeal.

¶ 24                                   CONCLUSION

¶ 25     For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed.

¶ 26     Reversed.

¶ 27     JUSTICE WRIGHT, dissenting:

¶ 28     Defendant has not asserted on appeal that her jury trial was unfair due to the evidence of her prior bad acts. Defendant has not requested this court to order a new trial due to the amount of evidence related to her prior bad acts that this jury received. Instead, pointing to the evidence of her prior bad acts in this record, defendant requests an outright reversal. Defendant formulates the issue presented for our review as follows:

> "Defendant does not contest that when viewed in a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Defendant committed an act of sexual penetration upon C.P. and that C.P. was under nine years of age when that act was committed. Defendant's only argument is that the evidence was insufficient to establish that Defendant was under seventeen years old when she committed the act of sexual penetration that the State argued occurred in 2016."

¶ 29     In support of her position that the State's evidence did not prove, beyond a reasonable doubt, that defendant was "under seventeen years old when she committed the act of sexual

8

penetration," our court has been asked to notice the differences between the crime alleged and the crime defined in the IPI Jury Instructions.

¶ 30        It is true that the charging instrument, which is *not* evidence, accuses defendant of committing an act of sexual penetration when she was exactly 16 years old in 2016. It is also true that the jury instructions required the jury to find defendant was less than 17 years old on the date of this crime. First, I note the specific language charging defendant with a criminal offense when she was age 16 in 2016, was procedurally necessary to *initiate* this criminal prosecution without first filing a delinquency petition. See 705 ILCS 405/5-130 *et seq.* (West 2016).

¶ 31        Due to the timing of defendant's birthdate, it is mathematically impossible for defendant to be any other age, other than exactly 16 years of age, at any time in 2016, prior to her birthday.[1] Perhaps this simple truth is the most important point of this separate offering. As long as the jury believed, beyond a reasonable doubt, that at least one act of sexual penetration took place during the first 9 1/2 months of 2016, the jury could find defendant guilty of one crime that she committed when she was exactly 16 years old and no younger than 16 years old as defendant contends. Hence, the very subtle variation in terminology between the complaint and the jury instructions is both unimportant and inconsequential in this case.

¶ 32        I recognize that the victim first told the jury that the weather was "hot" outside when the *last* act of sexual penetration took place in 2016, after he began his third grade year of school. In contrast, the victim later agreed with defense counsel's suggestion that the *last* act of sexual

---

[1]Defendant's contention that she might have been convicted of an act that she committed when she was younger than age 16 is unfounded in my view. I note that this contention of error could only be addressed by raising an issue claiming the State prematurely initiated this criminal prosecution without first filing a delinquency petition in the juvenile division of the circuit court. See *People v. Jones*, 81 Ill. 2d 1, 6-7 (1979) (holding that indicting a minor prior to the court's transfer of the case from juvenile court to criminal court, while error, is not necessarily reversible error). Defendant has elected not to present this procedural issue for our review.

9

penetration may have occurred midway through the victim's third grade school year. On appeal, defendant asserts that the evidence proves a sexual encounter took place near or after the Christmas break in 2016, when defendant was neither age 16, nor less than 17 years old. This logical conclusion is not outcome determinative.

¶ 33 If the jury believed the victim's testimony that he was eight years old and the weather was "hot" when the last sexual encounter took place, these facts meet every element of the offense. Importantly, if the jury believed that the last sexual encounter took place during the Christmas break in 2016, then the jury could also conclude that the last act of sexual penetration during the Christmas break in 2016 was not the only act of sexual penetration in 2016.

¶ 34 This jury heard defendant's recorded statement where she admitted committing 30 acts of sexual penetration over the course of the last five years. Based on this statement, the average number of sexual encounters would be six times per year. Since defendant's birthday fell within the last 10 weeks of 2016, I conclude a rational juror could have found at least one act of sexual penetration, if not more, took place during the first 42 weeks of 2016 and before defendant's 17th birthday.

¶ 35 Thus, I conclude the State's evidence when measured by the *Collins* standard, was sufficient to prove, beyond a reasonable doubt, every element of the charged offense. Therefore, I respectfully dissent.

¶ 36 As a side note, while our views differ, I respect the majority's decision that sets aside this conviction without ordering a new trial. With this perspective in mind, I note that defendant was convicted and sentenced when she was 17 years old. She has been incarcerated since that time and will soon become 21 years old.

10

¶ 37        In cases such as this, every day of delay before the final resolution of judicial review results in the loss of one day of freedom for a wrongfully convicted person. Facing these facts, I rhetorically wonder whether this is an appeal where justice was delayed and justice was denied, despite the most favorable outcome available in a criminal appeal.

¶ 38        Importantly, the favorable outcome of this appeal demonstrates the quality of appellate representation that is provided by the Office of the Appellate Defender. Yet, that office struggles to reduce the historical backlog of cases while still managing an ever increasing number of new appointments from this court. Nonetheless, this record shows that more than one year of delay took place from the date this court received the notice of appeal until the date appointed defense counsel filed defendant's opening brief. This case is not atypical. The systemic delay apparent in this appeal is an uncomfortable topic to discuss but I find it necessary to do so.

¶ 39        Securing more funding for the Office of the Appellate Defender may be fiscally impossible. Consequently, perhaps it is time to consider some action that reduces the number of criminal appeals that this agency is appointed to represent, including, but perhaps not limited to new and possibly pending appeals related to postconviction petitions, successive postconviction petitions, and section 2-1401 petitions.

¶ 40        Finally, I note the majority's holding does not necessitate a determination of other contentions of error raised in this appeal. Similarly, I limit this separate offering to the sufficiency of the evidence.