(No. 50558.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v.ROGELIO TAMAYO, Appellee.

*Opinion filed November 22, 1978.*

William J. Scott, Attorney General, of Springfield, and Daniel D. Doyle, State's Attorney, of Rockford (Donald B. Mackay, Melbourne A. Noel, Jr., and James A. Devine, Assistant Attorneys General, and Phyllis J. Perko, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Daniel Cum-

mings, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On June 30, 1975, a grand jury in Winnebago County indicted Rogelio Tamayo on one count of attempted murder and two counts of aggravated battery. After a hearing at which he was found fit to stand trial, defendant was convicted in a jury trial of attempted murder and one count of aggravated battery. The court sentenced him to four to six years' imprisonment for attempted murder and imposed no sentence for aggravated battery. The appellate court reversed (56 Ill. App. 3d 800), holding that the controlling statute then in effect, section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i)), impermissibly allocated to the defendant the burden of proving himself fit. That court also held that jury instructions given by the trial judge were reversibly prejudicial under *People v. Trinkle* (1977), 68 Ill. 2d 198, in that they allowed the jury to find defendant guilty of attempted murder on evidence not showing that he intended to kill his victim but only that he knew his acts created a strong probability of great bodily harm. We granted the State leave to appeal.

Defendant is from Cuba. He moved to the United States in 1968, but his command of English remains minimal. In December 1974, defendant was placed in a detoxification unit at Rockford Memorial Hospital after he was found lying in the snow, intoxicated. He then spent a month at the Singer Zone Center before being transferred to Bridgeway House, a halfway house for alcoholics. He had lived at Bridgeway for six months at the time of the shooting. The Illinois Department of Vocational Rehabilitation (DVR) had paid for defendant's room and board at Bridgeway and arranged for him to see a psychiatrist, to

attend Alcoholics Anonymous meetings, and to take English classes in order to prepare him for job training.

On June 4, 1975, defendant was told that DVR had withdrawn its support because he was not cooperating with the program and that he would have to find a job by June 15. Dan Spiro, the director of Bridgeway, testified that, after being told on June 4 that he would have to find a job, defendant said that he would not return to Bridgeway. Defendant testified that on the afternoon of June 4 he drank two beers, and then returned to Bridgeway where Spiro told him to take a walk to refresh himself. He walked the streets of Rockford all night. At 10:30 the next morning defendant returned to Bridgeway. Spiro testified that at this time he granted defendant's request to remain in the house until 5 p.m. to wait for a ride. Defendant testified that Spiro refused his request to stay in the house for two or three more days. The two men ate lunch together that day. Later in the afternoon they had a short conversation in the lounge. As Spiro was leaving, defendant called him back, and when Spiro came within arm's length defendant shot him twice, once in the chest and once in the arm. Defendant testified that he shot Spiro only after Spiro had again denied him permission to remain at Bridgeway for a few more days.

At the nonjury fitness hearing Dr. Thomas Eliseo, a clinical psychologist, and Dr. J.G. Graybill, a psychiatrist, testified for the defendant; Dr. Enrique Martinez, a psychiatrist, was called by the State. Dr. Eliseo's testimony was based on a one-hour interview with the defendant which was hampered by the fact that the psychologist knew very little Spanish and the defendant spoke only broken English. Dr. Eliseo testified that defendant was evasive, guarded and of low intelligence and had difficulty relating to people. The witness thought that defendant would not be able to understand the legal proceedings against him. Dr. Graybill had two interviews with the

defendant; an interpreter was present part of the time. Dr. Graybill testified that defendant's intelligence was minimal and that he did not really understand the charges, although he said he did. The witness stated that defendant was psychotic, and he believed that defendant would be unable to cooperate with his attorney, mainly because of the language barrier. Both Dr. Eliseo and Dr. Graybill recommended that defendant be examined by a Spanish-speaking psychiatrist because, as Dr. Graybill noted, "a more accurate estimation of this man's comprehension, as well as his intellectual ability" would be provided. Dr. Eliseo specifically recommended defendant's referral to Dr. Martinez.

The native language of Dr. Martinez, who testified for the State, is Spanish. He first saw defendant in December 1974 at Singer Zone Center and after that had weekly sessions with him for a period of 13 weeks. Dr. Martinez testified that defendant was not psychotic; he diagnosed the defendant's condition as passive-aggressive personality disorder, with mild depressive neurosis and excessive episodic drinking. The witness stated that defendant was culturally deprived but not retarded. The witness also testified that defendant could definitely understand the whole of the legal proceedings against him, that he was very concerned about the trial, and that he could aid defense counsel even without an interpreter. Dr. Martinez thought defendant would not trust his attorney, at least at first.

In finding the defendant fit to stand trial, the trial judge expressly indicated that Dr. Martinez was the most credible of the three witnesses because of the length of time he had had to observe the defendant. The judge also remarked that in his view defendant was knowingly refusing to cooperate with his attorney. He admonished the defendant to begin confiding in counsel, and he appointed a Spanish-speaking co-counsel to facilitate com-

munication.

At the time of the hearing, a provision of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i)) allocated the burden of proof in a fitness hearing to the defendant. In *People v. McCullum* (1977), 66 Ill. 2d 306, this court held that the statute constituted a denial of due process. Relying on *McCullum,* the appellate court in this case reasoned that because the record did not reveal any express allocation of the burden of proof at the hearing, due process required automatic vacation of the trial court's determination. We do not agree.

This issue was discussed and decided in *People v. Bilyew* (1978), 73 Ill. 2d 294. In that decision, this court held that where the record below did not contain any specific indication that the burden of proof had been a factor in the trial court's determination, but on the contrary was wholly consistent with and gave substantial support to the conclusion that defendant had been found fit by a preponderance of the evidence, vacation of the trial court's determination was improper. The record in this case comes squarely within the rationale of *Bilyew.* The trial judge stated his reasons for finding defendant fit. The defense's two expert witnesses testified that defendant was not fit, but their contact with defendant was limited and their communication with him was further impeded by the language barrier. The State's expert witness, who testified that defendant was fit, was a native Spanish speaker and had treated defendant over a considerable period of time. The trial judge expressly indicated that he believed the State's witness rather than the two defense witnesses. The record contains no specific indication that the burden of proof was a factor in the trial judge's determination, and the appellate court's vacation of his finding was therefore improper. Our conclusion is not altered by the fact that at the fitness hearing after

both sides had rested, the assistant State's Attorney stated: "Your honor, I believe it's the Defense Counsel who has the burden in this particular hearing," and defense counsel then commenced summing up. The reference to "burden" seems to have been related to the burden of going forward with the evidence or argument upon which we earlier commented. However intended, it cannot be interpreted as in any way indicating that the judge considered the fact to be of significance.

The appellate court also held that the attempted murder instructions given by the trial judge were erroneous. They are identical to instructions disapproved by this court in *People v. Harris* (1978), 72 Ill. 2d 16, 22, in which a majority of the court followed the earlier reasoning in *People v. Trinkle* (1977), 68 Ill. 2d 198, to the effect that "the instructions were defective in that they permitted the jury to find the defendant guilty of attempted murder if it concluded that the defendant knew that his acts created a strong probability of great bodily harm to another person even if the evidence did not show that the defendant had acted with an intent to kill." *People v. Harris* (1978), 72 Ill. 2d 16, 26-27.

In the present case the instructional error was compounded by the prosecutor's statement to the effect that an intent to commit murder did not necessarily imply a specific intent to kill. In his closing statement the prosecutor told the jury that the State must prove the defendant shot Spiro with the intent to commit murder. However, after summing up the evidence bearing on defendant's intent, he concluded "I think there is no question of this man's intent at the time he pulled the trigger three times, that was to do great bodily harm to Dan Spiro." This remark might well have misled the jury and predisposed them to find defendant guilty of attempted murder even though they believed his only intent was to inflict great bodily harm.

Accordingly, the judgment of the appellate court is affirmed as to the instructional error and reversed as to the validity of the fitness finding. The cause is remanded to the circuit court of Winnebago County for a new trial.

*Affirmed in part and reversed in part and remanded.*