THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENNIE L. DIXON, Defendant-Appellant.

First District (4th Division)   No. 77-535

Opinion filed October 18, 1979.

T. Lee Boyd, Jr., and Isaiah S. Gant, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Dale Woloshin, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial before the circuit court of Cook County, defendant, Bennie L. Dixon, was convicted of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)), and sentenced to a prison term of 14 to 15 years. On appeal, defendant contends (1) that he was unconstitutionally required to bear the burden of proof at his fitness hearing (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i)), and (2) that the trial

court's exclusion of a defense witness as a discovery sanction denied him his sixth and fourteenth amendment rights to a fair and impartial trial (U.S. Const., amends. VI and XIV).

We affirm defendant's conviction.

Defendant was charged with the November 23, 1973, shooting of Reggie Cason. The incident took place when an argument erupted over the outcome of a dice game. Cason was treated in the hospital for severe leg wounds but died 12 days after being shot.

During the trial, defendant took the stand. On the second day of his testimony, defendant's attorney informed the court that defendant had suffered epileptic seizures during the trial and was under medication. Counsel requested a fitness hearing on defendant's competency to continue with the trial because of this condition. After hearing argument by counsel, the trial judge found a bona fide doubt of defendant's fitness to continue with the trial and ordered that defendant be examined by Doctor Kelleher, director of the Psychiatric Institute of the circuit court of Cook County.

After examining defendant, Dr. Kelleher submitted a report to the court stating that defendant's epileptic condition would cause temporary periods of confusion requiring court recesses, but that it would not prevent defendant from assisting in his defense. Defendant's counsel argued that the report contained inconsistencies and requested that further evidence of defendant's fitness be heard. Before the proceedings continued, and in reliance on a statute then in effect but subsequently held unconstitutional in *People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307, the trial court stated that the defense had the burden of proving by a preponderance of the evidence defendant's unfitness to continue with the trial. See Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i).

The defense called defendant's mother to describe her son's condition. Then, without calling further witnesses, both the prosecution and defense requested a ruling on the fitness issue. The trial judge, however, determined that additional testimony should be heard and called Dr. Kelleher as a witness for the court. During his testimony, which reaffirmed the contents of his report, it was disclosed that the Psychiatric Institute's examination of defendant had not inquired into his condition on the night of the shooting incident. An additional psychiatric examination was then ordered by the court to explore this area. Dr. Kelleher again took the stand to report the findings of the second examination. It was his conclusion that there was no basis for believing that defendant had suffered a seizure at the time he shot Cason, or that defendant could not remember details of the shooting. At that time, the court found defendant fit to continue with the trial, agreeing to recess the

trial during any period when defendant was suffering the effects of an epileptic seizure.

When the trial resumed, the defense sought to present the medical testimony of Dr. Stanton Polin to rebut the State's medical testimony regarding the surgical procedures performed upon the victim and the eventual cause of Cason's death. The defense had not furnished Dr. Polin's name to the State in answer to discovery nor had the defense revealed its intention to present medical testimony until the State had rested its case. The State objected to the admission of Dr. Polin's testimony and the court, finding the doctor's testimony irrelevant to the issues in the case, sustained the State's objection to the testimony.

By offer of proof, Dr. Polin testified that in his opinion an alternative surgical treatment would have saved the victim's life although the treating physician followed acceptable medical practice in his treatment. The alternative procedure would have involved more time and greater risk to the patient. Dr. Polin stated that the primary cause of Cason's death was the bullet wound.

The trial court found defendant guilty of murder and sentenced him to 14 to 15 years imprisonment.

Opinion

I

At the time defendant's fitness hearing was held, section 5—2—1(i) of the Unified Code of Corrections provided:

> "The burden of proving the defendant is not fit is on the defendant if he raises the question and on the State if the State or the court raises the question." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i).)

Thereafter, the Illinois Supreme Court held section 5—2—1(i) unconstitutional as a violation of due process "to the extent that it places on the defendant the ultimate burden of proving unfitness to stand trial." (*People v. McCullum* (1977), 66 Ill. 2d 306, 314, 362 N.E.2d 307, 311.) In *McCullum* the court held that the unconstitutional allocation of the burden of proof required reversal of the trial court's determination of defendant's fitness to stand trial.

After *McCullum*, the supreme court considered two additional cases in which fitness hearings had been held at the request of the defendants prior to their decision holding section 5—2—1(i) unconstitutional. (*People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212; *People v. Tamayo* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.) Presumably, the fitness hearings in those cases had been conducted under the invalid statute. Nevertheless, in *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212, the court held that the trial court's presumed reliance on an unconstitutional statute did not

automatically require reversal where the record contained no specific indication that the burden of proof provision was a factor in the trial court's conclusion on the issue of fitness. The court held that the record in *Bilyew* did not substantiate the defendant's claim that he had been denied due process of law. The supreme court reached the same conclusion in *People v. Tamayo* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.

In this case, the record indicates the able and experienced trial judge was particularly concerned that the defendant's fitness to continue with the trial be established. As in *Bilyew* and *Tamayo*, the trial judge was the finder of fact at the fitness hearing, thus eliminating the possibility of misguiding the jury. Also, as explained in *Bilyew*, no significance can be attached to the fact that the defense was required to proceed first with the evidence. See Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(j).

■■ No expert witness was called by defendant to challenge the Psychiatric Institute's report. The only witness called by the defense was defendant's mother. She described her observations of defendant's epileptic seizures and periods of confusion after the seizures. Although mere evidence of epilepsy is not evidence of unfitness to stand trial (see *People v. Chmilenko* (1973), 14 Ill. App. 3d 270, 302 N.E.2d 455; *People v. Martin* (1966), 69 Ill. App. 2d 12, 216 N.E.2d 170), the trial judge declined to rule in favor of the prosecution at the end of defendant's evidence, but required expert testimony from Dr. Kelleher. When asked to rule at the end of defendant's evidence, the court stated:

"I think that the Court should have the benefit of medical testimony in this instance.

The issue is too serious, I think; and in the interest of justice, I should have everything before me. So, I'll reserve ruling on your motion and ask you to proceed."

■■ Defendant relies on the trial judge's oral enunciation of the statutory allocation of the burden of proof as evidence that the unconstitutional standard was substantially relied on by the court. In *Bilyew*, the court stated "the trial judge must be presumed to have followed the fitness statute in effect at the time of the hearing" (73 Ill. 2d 294, 300, 383 N.E.2d 212, 214); yet, the court found that the burden of proof was not a factor in the trial judge's conclusion. In *Tamayo*, the fact that defense counsel stated defendant had the burden of proof was found not to indicate "that the judge considered the fact to be of significance." (73 Ill. 2d 304, 310, 383 N.E.2d 227, 230.) We are of the opinion that no meaningful distinction can be made between the situation in *Bilyew*, where the judge was presumed to have followed the invalid statute, and here, where the judge, at the outset of the fitness hearing, indicated that he was aware of the requirements of the statute. In either case, where the record as a whole indicates the statutory burden of proof was not a significant factor in the

fitness determination, it may be concluded that the burden of proving the issue of fitness to stand trial was not ultimately borne by the defendant.
■ Here, the trial judge's finding of fitness was based on the testimony of Dr. Kelleher, called as the court's own witness. The trial judge indicated that although he believed the testimony of defendant's mother concerning defendant's epileptic seizures, it was not sufficient to show defendant unfit; however, the court went on to call Dr. Kelleher as its own witness and based its finding of fitness on the expert's testimony. Dr. Kelleher was of the opinion that defendant's epileptic condition might cause periods of confusion requiring the court to recess, but that it would not prevent defendant from assisting in his defense. It is evident from the record that the burden of proof provisions did not affect the trial court's determination and that defendant was found fit by a preponderance of the evidence. See *People v. Tamayo* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.

## II

Defendant also contends that it was improper for the trial court to exclude the testimony of defendant's medical expert as a discovery sanction. The defense wished to introduce Dr. Polin's testimony to show that medical negligence was the cause of the victim's death. The State argues that defendant's medical testimony was irrelevant and, therefore, properly excluded.
■ The discovery rules set out in Supreme Court Rules 413(d) and 415(b) require a defendant, in response to a written request by the State, to provide a list of witnesses he plans to call in his defense and imposes a continuing duty to disclose such information. (Ill. Rev. Stat. 1975, ch. 110A, pars. 413(d) and 415(b).) The court may impose sanctions for failure to comply with discovery, including the exclusion of evidence. Exclusion is a drastic sanction and should not be imposed to deprive defendant of a fair trial (*People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274), but where the evidence excluded is neither relevant to nor probative of the material issues in the case, the defendant cannot be heard to suggest that he was in any way prejudiced by its exclusion (see *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920).
■■ ■ The injury inflicted by an accused need not be the sole or immediate cause of death in order to constitute the legal cause of death. (See *People v. Love* (1978), 71 Ill. 2d 74, 373 N.E.2d 1312; *People v. Reader* (1962), 26 Ill. 2d 210, 186 N.E.2d 298.) Once the State has shown a sufficient cause of death by the act of defendant, the death is presumed to have resulted from such act, unless it appears that death was caused by a

supervening act disconnected from any act of the defendant. (*People v. Meyers* (1945), 392 Ill. 355, 64 N.E.2d 531; *People v. Dordies* (1978), 60 Ill. App. 3d 621, 377 N.E.2d 245.) It is a generally recognized principle that where a person inflicts upon another a wound which is dangerous, calculated to endanger or destroy life, it is no defense to a charge of homicide that the alleged victim's death was contributed to by, or immediately resulted from, unskilled or improper treatment of a wound or injury by attending physicians or surgeons. *People v. Stamps* (1972), 8 Ill. App. 3d 896, 291 N.E.2d 274.

■■ Here, Dr. Polin would have testified, as shown by the offer of proof, that the wound Cason sustained normally would not be fatal if properly treated, although it would be fatal without medical attention. The witness would have described an alternative medical procedure which he believed could have saved Cason's life. Finally, he would have stated that Cason received normal medical care and that he died of complications stemming from the bullet wound.

Dr. Polin's testimony did not indicate that medical negligence was a supervening and independent cause of the victim's death. In fact, Dr. Polin concluded that the cause of death was related to sustained shock, rapid heart rate, fever and a long period of stress caused by the injury to the artery and vein in the victim's leg. Because this evidence was not relevant to any legal defense available to defendant, it was not an abuse of the trial court's discretion to exclude Dr. Polin's testimony when the defense failed to disclose its intent to present the witness' testimony until after the State had rested its case.

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.