THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MONTRELL HOLMES, Defendant-Appellant.

First District (1st Division)   No. 1—90—2327

Opinion filed September 20, 1993.

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Nancy N. Colletti, Special Assistant State's Attorney, and Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Montrell Holmes was found guilty of attempted first-degree murder, armed violence and aggravated battery. The trial judge sentenced defendant to 16 years in the Illinois Department of Corrections for the attempted murder. Defendant appeals his attempted murder conviction and the resulting sentence. Defendant contends that: (1) attempted murder is a "specific intent" crime and, therefore, he was denied a fair trial when the trial judge improperly instructed the jury that it could convict defendant of attempted murder if it found the "general intent" to cause great bodily harm and where the prosecutor, in closing argument, compounded this error by reiterating that only general intent was needed to be guilty of attempted murder; (2) assuming there was sufficient evidence of "specific intent" to support a proper attempted murder instruction, the court erred in failing to instruct the jury on attempted second-degree murder because there was sufficient evidence of an unreasonable belief in self-defense and serious provocation to justify such an instruction; (3) the State failed to perfect impeachment where, in questioning defendant about his statement to police, the prosecutor insinuated that the statement differed from his testimony, yet the prosecutor never called the officer to testify in rebuttal; and (4) the trial judge abused his discretion in sentencing defendant to 16 years in prison by failing to give proper consideration to the aggravating and mitigating factors.

The victim, Timothy Montgomery, testified that on Friday, October 20, 1989, he was walking in the vicinity of 13th and Hastings Streets in Chicago, Illinois, when he encountered a man in his late sixties whom he knew as John B-B. According to the victim, John B-B had been badly beaten and, after speaking with John B-B, the victim was led to believe that defendant was responsible. The victim said that he then went to speak to defendant to ask him why he had beaten John B-B. He testified that he found defendant in a courtway between houses at 13th and Hastings and they argued and fought for approximately 10 minutes. Defendant then left the scene. The victim stated that he let defendant go "after I got the best of him."

Approximately four hours later, the victim was standing on the street and speaking with several men in a car. According to the victim, he heard a gunshot behind him, turned around, and saw defendant standing approximately 15 feet away pointing a gun at him. He felt blood on his shirt and realized he had been shot. He stated he had been shot three times; once in the hip, once in the side, and once in

the back. He maintained he was unarmed when the shooting occurred. He testified that, when the police arrived, he identified defendant as his assailant.

Officer Oralio Perez arrested defendant for the shooting at approximately 7 p.m. on October 20, 1989. Perez testified that defendant told him he borrowed the gun he used in the shooting. According to Perez, before taking defendant into the station, he searched for the man from whom defendant had said he borrowed the gun, but was unable to locate him.

Detective William Calabrese testified he spoke with defendant at the police station and defendant admitted to the shooting. He then contacted the State's Attorney's felony review unit.

Assistant State's Attorney Lynda Peters testified that she took a statement from defendant after his arrest at approximately 5:30 a.m. on October 21, 1989. She stated that defendant told her that the victim had beaten him up on the orders of a drug dealer named Junior for whom both the victim and defendant worked. According to Peters, defendant stated that after the fight he went home, washed, and took a nap. She testified that he told her he borrowed a gun from a friend, located the victim, and shot him. According to defendant's statement, when he approached the victim, they did not speak and he did not see anything in the victim's hands.

Defendant testified that he used to sell drugs for Junior at the corner of 13th and Hastings, but he had quit in October 1989. He stated that Junior was angry at him for not selling drugs anymore and had had a man slap him in the face and threaten him with a gun. He testified that, on October 20, 1989, at approximately 2 p.m., another man was in the process of beating defendant when the victim arrived. According to defendant, Junior told the victim that "he had paid him to jump on me and he wanted him to beat me until he see some blood." Defendant said that the victim then proceeded to beat defendant in the face for several minutes until Junior told him to stop.

Defendant stated that he borrowed a gun for his protection because he believed he would be attacked again. He said that, while walking to his girl friend's house, he saw the victim and asked him why he had attacked him. He testified that the victim responded, "[t]hat's what he get paid to do." According to defendant, the victim turned around and walked toward him with his hands in his pockets. He said that he feared that the victim was about to attack him again, so he shot him. Defendant admitted that the victim was unarmed and had not threatened him just prior to the shooting.

Defendant's first contention on appeal is that attempted murder is a "specific intent" crime and that the jury was improperly given instructions which would permit it to return a guilty verdict on a showing of less than the specific intent to kill. Specifically, defendant asserts that the instructions would allow a conviction upon a finding that defendant knew that his actions would "create a strong probability of death or great bodily harm" to the victim. The following instructions were given to the jury:

"A person commits the offense of first degree murder when he kills an individual without lawful justification if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual;

or

he knows that such acts will cause death to that individual;

or

*he knows that such acts create a strong probability of death or great bodily harm to that individual.*" (Emphasis added.) (Illinois Pattern Jury Instructions, Criminal, No. 7.01A (2d ed. Supp. 1989) (hereinafter IPI Criminal).)

"A person commits the offense of attempt when he, with intent to commit the offense of first degree murder, does any act which constitutes a substantial step toward the commission of the offense of first degree murder.

The offense attempted need not have been committed." IPI Criminal 2d No. 6.05.

Additionally, defendant asserts that the prosecutor compounded this error when he argued to the jury that defendant was guilty if he acted with the intent to cause great bodily harm. During closing argument, the prosecutor made the following statements:

"In addition for the attempt murder we must show that another substantial step was taken towards a murder, in other words, the pulling of the gun and the firing of that gun. Think about it. When someone takes out a gun and shoots someone three times at relatively close range in the torso area there's a pretty good possibility or probability that that person is going to die or if they're not going to die they're at least going to suffer great bodily harm and that's something else that must be shown.

When that person pulled a gun could he have known that it was pretty probable that firing that close with that type of a gun in that part of the body was going to cause some pretty serious injuries?"

It is established law in Illinois that "attempt" is a specific intent crime and that "[a]n instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." (*People v. Kraft* (1985), 133 Ill. App. 3d 294, 298, 478 N.E.2d 1154, 1157, citing *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33.) Illinois courts have held that in order to resolve the inherent conflict between the mental states required to prove attempted murder and murder, a court presiding over an attempted murder prosecution should modify the definition of murder by omitting from the instructions any reference to mental states short of the intent to kill. (*People v. Jones* (1979), 81 Ill. 2d 1, 9, 405 N.E.2d 343, 346; *Kraft*, 133 Ill. App. 3d at 302, 478 N.E.2d at 1160; see IPI Criminal 3d No. 7.01, Committee Note, at 134-35.) Numerous courts confronted with the exact situation presented here have found error. *Jones*, 81 Ill. 2d at 9, 405 N.E.2d at 346; *People v. Tamayo* (1978), 73 Ill. 2d 304, 310, 383 N.E.2d 227, 230; *Harris*, 72 Ill. 2d at 27, 377 N.E.2d at 33; *People v. Trinkle* (1977), 68 Ill. 2d 198, 199, 369 N.E.2d 888, 889; *People v. Felder* (1992), 224 Ill. App. 3d 744, 755, 586 N.E.2d 729, 736; *Kraft*, 133 Ill. App. 3d at 302-03, 478 N.E.2d at 1160.

Additionally, in *Tamayo* (73 Ill. 2d at 310, 383 N.E.2d at 230), the Illinois Supreme Court held such instructional errors to be compounded by the prosecutor's assertion in closing argument that the jury could convict if it found general intent had been proven. Clearly, the instructions given in this case would allow the jury to convict defendant upon a showing that he acted with knowledge that his actions created a strong probability of death or great bodily harm. Since such instructions would permit the jury to convict defendant even if it did not believe he acted with the intent to kill the victim, the instructions given were improper.

Since law in this area is clear, the State does not argue that the jury instructions were proper. The State asserts that defendant has waived this issue both by failing to object at the instruction conference and by not raising the question in his post-trial motion for a new trial. Alternatively, the State contends that any error resulting from the use of the above instructions was harmless in view of the overwhelming evidence that defendant intended to kill the victim.

An alleged trial error is waived on review if not objected to at trial and then raised in a subsequent post-trial motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130.) In order to preserve a perceived error in jury instructions, defendant must object at the instruction conference and then again in his post-

trial motion. (*People v. Martin* (1992), 236 Ill. App. 3d 112, 119, 603 N.E.2d 603, 608.) In this case, as the State points out, defendant failed to make any such objections.

Under the "plain error" doctrine, however, we will review alleged errors which were improperly preserved if the evidence is so "closely balanced" that an innocent person may have been convicted as a result of the error or if the alleged error is of such magnitude that, if true, would have denied defendant a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209-10, 561 N.E.2d 1, 7-8; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233, 238; *Martin*, 236 Ill. App. 3d at 119, 603 N.E.2d at 608.) Supreme Court Rule 451(c) (134 Ill. 2d R. 451(c)) also provides that substantial defects in instructions "are not waived by failure to make timely objections thereto if the interests of justice require." Generally, failure to give an instruction seldom rises to the level of plain error. (*Martin*, 236 Ill. App. 3d at 120, 603 N.E.2d at 608.) The State cites *People v. Solis* (1991), 216 Ill. App. 3d 11, 576 N.E.2d 120, in support of its argument that the "plain error" doctrine does not apply in this case.

In *Solis* (216 Ill. App. 3d at 18, 576 N.E.2d at 124), defendant argued for the reversal of his attempted murder conviction on the grounds that the jury was incorrectly instructed that it could convict him if it found "he merely intended to inflict great bodily harm upon the victim." The *Solis* court recognized that "specific intent to kill is an essential element of attempted murder." (*Solis*, 216 Ill. App. 3d at 19, 576 N.E.2d at 124.) Relying upon *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E.2d 1027, 1029, however, the *Solis* court held that defendant waived consideration of the issue on review by failing to object in a timely manner and that the alleged error in jury instructions was "not sufficiently grave" as to fall under the "plain error" doctrine. (*Solis*, 216 Ill. App. 3d at 19-20, 576 N.E.2d at 125.) The *Solis* court went on to conclude that, notwithstanding waiver, the improper instruction constituted harmless error in light of the overwhelming evidence against defendant. *Solis*, 216 Ill. App. 3d at 20, 576 N.E.2d at 125.

We respectfully decline to follow *Solis* to the extent that it found the instructional error waived, because, in our opinion, it is contrary to the Illinois Supreme Court decision in *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861. In *Ogunsola* (87 Ill. 2d at 218, 429 N.E.2d at 862), the defendant was convicted of deceptive practices. The instruction the trial court gave to the jury, however, incorrectly stated the law in that it omitted an essential element of the offense, namely the requirement that the accused had the intent to defraud.

(*Ogunsola*, 87 Ill. 2d at 220, 429 N.E.2d at 863.) The supreme court ruled that, although defendant did not properly preserve the issue for review, the defect in the instruction rose to the level of plain error. (*Ogunsola*, 87 Ill. 2d at 222-23, 429 N.E.2d at 864.) The *Ogunsola* court stated:

> "The interests of justice demand that the rule of waiver be modified, in criminal cases, where necessary to ensure the fundamental fairness of the trial. [Citations.] Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given. [Citation.] The failure correctly to inform the jury of the elements of the crime charged has been held to be error so grave and fundamental that the waiver rule should not apply. [Citations.] It is of the essence of a fair trial that 'the jury not be permitted to deliberate a defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime.' [Citation.]" (*Ogunsola*, 87 Ill. 2d at 222, 429 N.E.2d at 864.)

The *Ogunsola* court also noted that its conclusion was consistent with the holding in *Tannenbaum*, the decision upon which the *Solis* court relied. The *Ogunsola* court stated that in *Tannenbaum*, although the jury was not given an instruction on the value of the property in question, the jury was given all the instructions required to deliberate defendant's guilt or innocence. (*Ogunsola*, 87 Ill. 2d at 223, 429 N.E.2d at 865.) In *Tannenbaum*, there was no dispute as to the value of the property, so the failure to instruct on that element did not affect the deliberations. *Ogunsola*, 87 Ill. 2d at 223, 429 N.E.2d at 865.

■ In this case, therefore, we believe it proper to review this issue under the "plain error" doctrine because to allow the jury to convict defendant of attempted murder even if it believed that he never intended to kill the victim would deprive defendant of a fair determination of his guilt or innocence. Such an error "deprives the jury of the guidance it must have properly to decide the case." (*Ogunsola*, 87 Ill. 2d at 223, 429 N.E.2d at 865.) As this court recently stated, the reason that failure to properly instruct the jury on the essential elements of the crime charged is a mistake of such magnitude as to constitute plain error is because it is fundamental "in our American system of justice and often necessary to give a defendant a fair trial and

to allow the jury to properly weigh the evidence." *Martin,* 236 Ill. App. 3d at 120, 603 N.E.2d at 608.

Although we address this issue under the "plain error" doctrine, we hold that the error was harmless. " ' "Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty." ' " (*Felder,* 224 Ill. App. 3d at 755-56, 586 N.E.2d at 736, quoting *Jones,* 81 Ill. 2d at 9, 405 N.E.2d at 346, quoting *People v. Ward* (1965), 32 Ill. 2d 253, 256, 204 N.E.2d 741, 743.) Moreover, " '[A]n erroneous intent instruction does not warrant reversal where intent to kill is evident from the circumstances.' " *Solis,* 216 Ill. App. 3d at 19, 576 N.E.2d at 125, quoting *People v. Bryant* (1984), 123 Ill. App. 3d 266, 274, 462 N.E.2d 780, 786.

In this case, defendant testified that earlier in the day the victim had beaten him. Four hours later, defendant borrowed a gun, located the victim and shot him in the back, in the side and in the stomach from relatively close range. According to defendant's own testimony, the victim was unarmed and had not threatened him just prior to the shooting. In view of these facts, the evidence that defendant intended to kill the victim is overwhelming and, even if properly instructed, the jury could not have reasonably found him not guilty of attempted first-degree murder.

Defendant's second contention on appeal is that the evidence which supported his defense of self-defense also supported the existence of an unreasonable belief in self-defense or serious provocation. Therefore, defendant contends that the trial court erred in failing to give an instruction on attempted second-degree murder.

■ There is a split of authority in Illinois on whether the offense of attempted second-degree murder even exists. (Compare *People v. Aliwoli* (1992), 238 Ill. App. 3d 602, 622-23, 606 N.E.2d 347, 360 (attempted second-degree murder is not a crime in Illinois), and *People v. Williams* (1991), 220 Ill. App. 3d 460, 464-65, 581 N.E.2d 113, 116 (same), with *People v. Austin* (1991), 215 Ill. App. 3d 323, 333, 574 N.E.2d 1297, 1304 (attempted second-degree murder does exist), and *People v. Moore* (1990), 204 Ill. App. 3d 694, 698, 562 N.E.2d 215, 217 (same).) Defendant, however, never requested such an instruction and did not raise the issue in his post-trial motion. Therefore, he has waived this issue by failing to properly preserve it for review. *Enoch,* 122 Ill. 2d at 187, 522 N.E.2d at 1130.

The "plain error" doctrine does not save defendant either. Generally, the trial court has no duty to give instructions unless properly

tendered by trial counsel. (*Martin*, 236 Ill. App. 3d at 118, 603 N.E.2d at 607.) Additionally, as stated above, there are very few situations in which failure to give an instruction will rise to the level of plain error. (*Martin*, 236 Ill. App. 3d at 120, 603 N.E.2d at 608.) Only errors which are fundamental to our American system of justice, such as failure to give an instruction on the burden of proof, the presumption of innocence, or the essential elements of the crime charged, will implicate the "plain error" doctrine. (See *People v. Layhew* (1990), 139 Ill. 2d 476, 486, 564 N.E.2d 1232, 1236-37; *Ogunsola*, 87 Ill. 2d at 222, 429 N.E.2d at 864; *Martin*, 236 Ill. App. 3d at 120, 603 N.E.2d at 608.) In this case, the failure to give such a lesser offense instruction was not of such magnitude that it would have denied defendant a fair trial, especially where the evidence overwhelmingly supported his attempted first-degree murder conviction.

Defendant's third contention on appeal is that the State failed to perfect impeachment where, in questioning defendant about his statement to police, the prosecutor insinuated that the statement differed from his testimony, yet the prosecutor never called the officer to testify in rebuttal. He argues that his guilt was dependent upon the degree of credibility the jury afforded his and the victim's testimony "over what precipitated their fight and whether [defendant] was in danger of further attacks from [the victim]." He contends that in two specific instances during trial, the prosecutor improperly failed to complete impeachment and thus "substitut[ed] insinuation and innuendo for proof."

During cross-examination, the prosecutor brought out that defendant's written statement did not include his assertion that he shot the victim because he was fearful for his life. The following examination then occurred:

"MR. O'CONNOR [assistant State's Attorney]: You didn't tell Detective Calabrese that, correct?

DEFENDANT: Incorrect.

MR. O'CONNOR: You did tell Detective Calabrese that?

DEFENDANT: If I can remember, I did."

Defendant also stated on cross-examination that he spoke to the victim just prior to shooting him and that the victim told him that he had been paid to fight defendant. He then conceded that this fact was not in his written confession. The prosecutor then asked defendant, "In fact, you didn't tell that to Detective Calabrese either, did you?" Defendant replied, "If I can remember, I think I did." Defendant argues that failure to call Calabrese to perfect this impeachment was so prejudicial that it mandates reversal of his conviction.

The State asserts that defendant has waived this issue on review because he failed both to object at trial and to raise the issue in his post-trial motion. We agree that the question has been waived. Additionally, the "plain error" doctrine does not apply because the alleged incomplete impeachment is not so egregious that it illustrates an intent on the part of the prosecution to prejudice defendant through a "pattern of prejudicial and unsupported insinuations which would, without question, necessitate a new trial." *People v. Nuccio* (1969), 43 Ill. 2d 375, 394, 253 N.E.2d 353, 363.

■ Notwithstanding waiver, however, the error was harmless. "It is improper for the prosecutor to ask a witness questions for purposes of impeachment unless the prosecutor is prepared to offer proof of the impeaching information." (*People v. Olinger* (1986), 112 Ill. 2d 324, 341, 493 N.E.2d 579, 588.) Incomplete impeachment requires reversal "only where the insinuations are substantial, repeated, and definitely prejudicial." (*People v. Jurczak* (1986), 147 Ill. App. 3d 206, 217, 497 N.E.2d 1332, 1341.) Assuming the objected-to impeachment was improper, it clearly did not rise to the level requiring reversal.

The first alleged incomplete impeachment related above clearly implies that defendant did not fear for his life at the time of the incident or else he would have told Calabrese of this fear when he made his statement. The prosecutor was insinuating that, in order to support his claim of self-defense, defendant was falsely asserting for the first time at trial that he had shot the victim out of fear for his life. However, what defendant fails to point out is that just previously on cross-examination he already had admitted that the first time he claimed he acted out of fear for his life was at trial. Therefore, this alleged error could not have been so prejudicial as to have skewed the outcome of the trial.

The second instance of alleged incomplete impeachment related above also does not tend to negate defendant's assertion of self-defense. Clearly, his statement at trial that the victim told him just prior to the shooting that he had been paid to beat defendant is, at best, weak support for his assertion that he acted in self-defense. The statement is not threatening nor does it indicate that defendant should be in immediate fear for his life. Assuming this was improper incomplete impeachment, the error was not prejudicial and did not deny defendant a fair trial.

Defendant's final contention is that the trial judge abused discretion in sentencing him to 16 years in prison by failing to give proper consideration to the aggravating and mitigating factors. He contends that his lack of a prior criminal record and his youth (18 years old)

support the minimum sentence required by law. The State, on the other hand, maintains that the trial judge appropriately exercised his discretion in imposing upon defendant a sentence which was well within the statutory guidelines after properly considering the relevant aggravating and mitigating factors. The State also asserts that defendant has waived this issue on review because defendant did not object when the sentence was imposed nor did he raise the issue in his post-trial motion.

We believe that this issue is properly reviewed under the "plain error" doctrine. (See *People v. Martin* (1988), 119 Ill. 2d 453, 459, 519 N.E.2d 884, 887; *People v. Saldivar* (1986), 113 Ill. 2d 256, 266, 497 N.E.2d 1138, 1142.) A defendant's "fundamental right to liberty" is unjustly affected and his right not to be sentenced based upon improper factors violated when the judge relies upon improper factors in sentencing defendant to prison. (*Martin*, 119 Ill. 2d at 458, 519 N.E.2d at 886.) Most of all, it is impractical to expect counsel to interrupt the judge while he is imposing sentence in order to point out that he is considering improper factors. *Saldivar*, 113 Ill. 2d at 266, 497 N.E.2d at 1142.

The determination of the proper sentence to impose upon a convicted defendant is a matter of judicial discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) As long as the sentence is within the statutory limits, it will not be disturbed unless it was an abuse of discretion. (*Perruquet*, 68 Ill. 2d at 153, 368 N.E.2d at 883.) Neither will we substitute our judgment for that of the trial judge even if we believe we would have imposed a different sentence, because the trial judge is "in a better position to determine the punishment to be imposed." *Perruquet*, 68 Ill. 2d at 154-56, 368 N.E.2d at 884.

■ A review of the record demonstrates that the trial judge considered defendant's youth and his lack of a prior criminal record, but concluded that "the facts of this case are very aggravating." In sentencing defendant to 16 years in prison, the trial judge stated:

> "Taking everything into consideration, injuries suffered, believable testimony of [the victim], coupled with your lack of criminal background, your age, nonetheless I find that the aggravation here far outweighs mitigation."

Additionally, we should note that attempted murder is a Class X felony (Ill. Rev. Stat. 1991, ch. 38, par. 8—4 (now 720 ILCS 5/8—4 (West 1992))) punishable by not less than six years' nor more than 30 years' imprisonment. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992)).) The sentence imposed

here by the trial judge was well within the statutory limits. Therefore, the trial judge did not abuse his discretion in sentencing defendant to 16 years in prison.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.